IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AMY N. MICKELSON,
1604 Maplewood Drive
New Ulm, MN 56073

        Plaintiff,

   -vs-

CABELA'S WHOLESALE, INC.,
c/o Registered Agent
National Registered Agents, Inc.
8040 Excelsior Drive, Suite 200
Madison, WI 53717

        Defendant.

Case No. 14-CV-37

JURY DEMAND

## COMPLAINT

NOW COMES Plaintiff, Amy N. Mickelson, by her attorneys, Hawks Quindel, S.C., through Nicholas E. Fairweather and Colin B. Good, and hereby states the following as her Complaint in the above-referenced matter:

### I. NATURE OF PROCEEDINGS

1. Plaintiff brings this civil action against Defendant, Cabela's Wholesale Inc., claiming sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.*, ("Title VII"), as amended, and wage discrimination in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

1

## II. JURSIDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(4) because it arises under the laws of the United States and an Act of Congress for the protection of civil rights. The jurisdiction of the Court is invoked specifically to secure protection of and redress deprivation of rights guaranteed by federal law, which rights provide for damages, injunctive and other relief for illegal discrimination in employment.

3. Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because Defendant operates a facility in this District and because substantial parts of the events or omissions giving rise to the claims occurred in this District.

## III. PARTIES

4. Plaintiff, Amy N. Mickelson ("Mickelson"), was an adult resident of the State of Wisconsin at all times relevant hereto and now resides at 1604 Maplewood Drive, New Ulm, Minnesota 56073. Mickelson was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e).

5. Defendant, Cabela's Wholesale, Inc. ("Cabela's"), is a foreign corporation licensed to do business in the State of Wisconsin with four locations in the state, including Prairie du Chien, employing more than fifteen (15) employees. Cabela's registered agent for service is National Registered Agents, Inc., 8040 Excelsior Drive, Suite 200 Madison, WI 53717.

6.      Cabela's is both an "employer" within the meaning of 29 U.S.C. § 203(d) and an "enterprise" engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1).

7.      Mickelson filed a timely charge of sex discrimination and wage discrimination with the Wisconsin Department of Workforce Development ("DWD") and the Federal Equal Employment Opportunities Commission ("EEOC") on June 8, 2012, within 300 days after the unlawful employment practices occurred as described herein.

8.      On October 23, 2013, the EEOC issued Mickelson a Notice of Right to Sue and this action is brought 90 days after her receipt of said Notice. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit A.

## IV.   FACTUAL ALLEGATIONS:

9.      Mickelson began her employment with Cabela's at its location in Prairie du Chien, Wisconsin on November 17, 2008.

10.     She was hired as a Retail Merchandise Manager II in the Softlines Department at a starting salary of $47,000 per year.

11.     Mickelson arrived at Cabela's having earned a four-year bachelor's degree from the University of Iowa as well as accrued five years and three months' experience as an executive team leader at Target Corporation.

3

## SEX DISCRIMINATION

12. Cabela's hired Brad Wilson ("Wilson") as a Senior Softlines Manager approximately four months prior to Mickelson's employment. Wilson, who does not hold a college degree, had accumulated nine and one-half years' retail experience prior to his employment at Cabela's.

13. Mickelson rapidly progressed through the ranks at Cabela's earning additional responsibilities including both Senior Hardlines and Senior Softlines management duties during a period of transition in 2009.

14. Cabela's selected Mickelson to be enrolled in its inaugural General Manager Development Program in early 2010, a program which seeks to foster high potential senior managers to become future General Managers. As a result, Mickelson earned a "Director's Appreciation Pin" from the Vice President of Store Operations in May 2010.

15. On or about January 3, 2012, Cabela's promoted Mickelson into the position of Senior Operations Manager of the Prairie du Chien store, overseeing three department managers. Cabela's had also selected Mickelson to be a member of the "Pro Team," a position which acknowledged her capacity as one of the top performing managers in the country and enabled her to assist Cabela's in new store openings throughout the region.

16. In March 2011, Mickelson became aware of a potential romantic relationship between two store employees, Stephanie Carolan ("Carolan") and Greg

4

Wilwert ("Wilwert"). Mickelson learned of the rumors from Darrin Brink ("Brink"), the Retail Senior Hardlines Manager at the Prairie du Chien location.

17. Wilwert was the Customer Experience Manager for the Prairie du Chien store and Carolan's direct supervisor at the time the rumors circulated.

18. Cabela's maintains a "mutual attraction" policy that requires certain categories of employees to report their potential or actual relationship to managers or supervisors in order to avoid favoritism and/or harassment.

19. The policy states, "[i]f there is a potential for romantic involvement, then the Manager or Supervisor must bring the issue to their Manager that they report to prior to any involvement. Their manager and Human Resources will, in turn, determine whether a transfer for one or both of the employees is appropriate." The policy provides that those managers who violate the policy are subject to discipline up to and including termination.

20. Mickelson was not the only manager who was aware of the rumors regarding the potential relationship between Carolan and Wilwert.

21. In addition to Brink, who had informed Mickelson about the possible relationship, both Wilson, the Senior Softlines Manager, and Joseph Brown ("Brown"), a CLUB Membership Manager, were also aware of the rumors regarding a potential romantic relationship between Carolan and Wilwert.

22. In fact, Carolan directly told Brown on multiple occasions between March 2011 and May 2011 that she had engaged in consensual sexual contact with Wilwert in November and December 2010.

23.     Mickelson confronted Carolan and Wilwert separately about the rumors regarding their possible romantic relationship in March 2011.

24.     Mickelson explained to each Carolan and Wilwert that the existence of such a relationship without acknowledgement to Cabela's human resources department would violate Cabela's mutual attraction policy.

25.     Carolan denied the existence of a romantic relationship with Wilwert in her conversation with Mickelson.

26.     Wilwert also denied the existence of a romantic relationship with Carolan during his conversation with Mickelson.

27.     Wilson also confronted Wilwert about the rumors regarding his possible romantic involvement with Carolan but Wilwert denied the existence of such a relationship during his conversation with Wilson.

28.     Brown also confronted Wilwert about the rumors regarding his possible romantic involvement with Carolan but Wilwert again denied the existence of such a relationship during his conversation with Brown.

29.     None of the managers, including Brink, Mickelson, Wilson, and Brown, reported the existence of the rumors regarding Carolan and Wilwert to the human resources department or the General Manager, Stephen Farone.

30.     Approximately one year passed during which Carolan sought and received a transfer from the Prairie du Chien store to another Cabela's location in Rogers, Minnesota.

31. On or about February 20, 2012, Kyle Mezera, Asset Protection Manager at the Prairie du Chien location, reported to human resources that Carolan told him she had engaged in a brief relationship with Wilwert while she was employed in the Prairie du Chien store.

32. On February 21, 2012, Jane Baker ("Baker"), Retail Human Resources Manager, and Jackie Walz ("Walz"), Regional Human Resources Manager, launched an investigation into the relationship under Cabela's Anti-Harassment and Mutual Attraction policies.

33. Baker and Walz reviewed emails and statements from a number of individuals and also met with a number of those individuals, including Wilwert, Carolan, Mickelson and Brown.

34. Carolan, who was no longer working in the Prairie du Chien store, and Wilwert both admitted to having engaged in consensual sexual contact with each other in November and December 2010 as well as exchanging graphic text messages for a period of time in 2011.

35. Brown related to Baker and Walz that Carolan had directly told him on a number of occasions between March 2011 and May 2011 that she had engaged in consensual sexual contact in November and December 2010 with Wilwert. Brown also admitted that he had failed to report those conversations to human resources or the general manager.

36. Brown also told Baker and Walz that he had discussed the rumors with Mickelson but in vague terms without discussing the nature of his conversations with Carolan about the relationship.

37. Mickelson told Baker and Walz that she was aware of the rumors of a relationship between Carolan and Wilwert but, having confronted both separately and confirming that no relationship existed, possessed no direct knowledge regarding their sexual contact or the existence of graphic texts.

38. Cabela's terminated Mickelson on March 8, 2012 for failing to report a suspected or actual violation of its Business Code of Conduct and Ethics as well as the Mutual Attraction Policy.

39. Mickelson had not received any previous discipline under Cabela's progressive discipline system.

40. Cabela's did not discipline Brown but recommended that he go through additional coaching, even though he had direct knowledge of the relationship and failed to report it to human resources or the general manager.

41. Cabela's gave Wilson a final written warning for failure to report a suspected or actual violation of its Business Code of Conduct and Ethics and the Mutual Attraction Policy.

42. Cabela's terminated Wilwert on March 7, 2012, for violation of its mutual attraction policy.

43. Cabela's did not terminate Carolan and she continues to work for Cabela's in its Rogers, Minnesota location.

## WAGE DISCRIMINATION

44. Cabela's maintains a job classification and pay grade system in which each position is assigned to a particular pay grade, which includes a job code, pay code, and pay range.

45. The job codes are related to the nature of the position and the pay codes vary from A to E based on the labor costs and the cost of living in the city where the store is located.

46. The pay ranges vary from 11 to 23 and each pay range has a set minimum, mid-point, and maximum.

47. All salaried retail positions are coded as RT and, based on the costs of labor and costs of living as well as other factors, pay codes for the Prairie du Chien store are pay code B.

48. The combine job code and pay code for salaried positions at the Prairie du Chien store is RTB.

49. Base pay rates for salaried retail positions are determined by the hiring manager and store human resources manager using a variety of factors including the candidate's education, experience, training, performance, and knowledge.

50. At the time of her termination, Mickelson, who possessed five years of sales experience and a four-year college degree as well as responsibility for three department managers, was earning a base salary of $52,289.99 and was classified as Grade Level 16RTB.

51. Wilson, a male who worked as the Senior Softlines Manager with sales experience of nine years but no college degree and supervision of only one department manager, earned approximately $55,104.66 in base salary and was classified as Grade Level 16RTB.

52. Nick Coffield ("Coffield"), who replaced Mickelson as Senior Operations Manager and had accumulated less sales experience than Mickelson, earned approximately $59,999.94 and was classified as Grade Level 16RTB.

53. Jason Heitritter, a male who worked as the Power Sports Sales Manager, earned approximately $60,900.06 annually and was classified as Grade Level 15RTB, one level below Mickelson with no supervision responsibilities.

## V. CAUSES OF ACTION:

**VIOLATION OF PLAINTIFF'S RIGHTS AS GUARANTEED BY TITLE VII**

54. Mickelson realleges and reincorporates the allegations contained in paragraphs 1-53 above.

55. Mickelson is a member of a protected class, female.

56. Mickelson was qualified for her position as the Senior Operations Manager.

57. Cabela's terminated Mickelson's employment on March 8, 2012.

58. Mickelson was replaced by a male, Coffield, and two similarly situated male employees, Wilson and Brown, were treated more favorably.

59. Cabela's impermissibly paid similarly situated male employees, including Wilson, Coffield, and Heitritter and others, more money for substantially equal or comparable work.

60. Cabela's violated Mickelson's right to be free from discrimination in the terms and conditions of her employment on the basis of her sex as guaranteed by Title VII of the Civil Rights Act of 1964, when she was unlawfully terminated.

61. Cabela's failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate sex discrimination from the workplace and to prevent it from occurring in the future.

62. As a direct and proximate result of Cabela's discrimination against Mickelson, she has suffered and will continue to suffer damages including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and emotional distress.

### VIOLATION OF PLAINTIFF'S RIGHTS AS GUARANTEED BY THE EQUAL PAY ACT

63. Mickelson realleges and reincorporates the allegations contained in paragraphs 1-62 above.

64. Cabela's paid similarly situated male employees, including Wilson, Coffield, and Heitritter, more money than Mickelson for jobs which required equal skill, effort, and responsibilities under similar working conditions.

65. Cabela's engaged in a pattern and practice of unequal pay between similarly situated male and female workers for jobs which required equal skill, effort, and responsibilities under similar working conditions. Cabela's failed to

11

comply with its statutory duty to take all reasonable and necessary steps to eliminate unequal pay based on gender from the workplace and prevent it from occurring in the future.

66. As a direct and proximate result of Cabela's pattern and practice of unequal pay between similarly situated male and female workers for jobs which required equal skill, effort, and responsibilities under similar working conditions, Mickelson has suffered and will continue to suffer damages including wages and benefits, liquidated damages, and back pay.

WHEREFORE, Plaintiff demands Judgment against Defendant, awarding her:

A. Appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Cabela's unlawful employment practices, including but not limited to rightful reinstatement and/or front pay;

B. Compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of in the paragraphs above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation to be determined at trial;

C. Compensation for punitive damages, as well as liquidated damages, for Cabela's malicious and reckless conduct described above in amounts to be determined at trial;

D. Grant such further relief as the Court deems necessary and proper in the public interest; and

E. An award of reasonable attorney's fees.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all questions of fact and law raised by her complaint.

Dated at Madison, Wisconsin, this 21st day of January, 2014.

Respectfully submitted:

**HAWKS QUINDEL, S.C.**
*Attorneys for Complainant Amy N. Mickelson,*


By: *s/ Nicholas E. Fairweather*
    Nicholas E. Fairweather
    State Bar No. 1036681
    Email: nfairweather@hq-law.com
    Colin B. Good
    State Bar No. 1061355
    Email: cgood@hq-law.com
    222 West Washington Avenue, Suite 450
    Post Office Box 2155
    Madison, Wisconsin 53701-2155
    Telephone: 608-257-0040
    Facsimile: 608-256-0236